## Dry Branch Coal Company v. Kirby, et al.

### (Decided December 18, 1925.)

### Appeal from Bell Circuit Court.

1. Appeal and Error—Part of Judgment Against Plaintiff from which no Cross-Appeal was Prosecuted Not Disturbed on Defendant's Appeal.—Where plaintiff recovered judgment for part of claim, part of judgment against plaintiff, from which no cross-appeal was prosecuted, cannot be disturbed on defendant's appeal.

2. Mines and Minerals—In Absence of Notice of Withdrawal, Contract Held Binding on Both Parties.—Where coal company had right on reasonable notice to withdraw from contract for mining of coal on consolidated land of defendant and company and thus relieve itself from payment of royalties, but it had not given such notice, the contract remained binding on both parties, though it did no mining on defendant's land.

LOW & BRYANT and JAS. M. GILBERT for appellant.

JAMES H. JEFFERIES for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This suit was commenced in the Bell circuit court by Mrs. Dora Kirby and her mother, America Creech, against the Dry Branch Coal Company, a corporation, to recover about $4,000.00 due, as it was alleged, for royalties on coal taken from a consolidated boundary of land severally owned by appellant and appellees. The court rendered judgment for Mrs. Kirby and Mrs. Creech for the sum of $457.72, with a lien on the real property of the coal company, and directing that the same be enforced. From this judgment the coal company alone appeals.

On March 20, 1918, appellant company entered into a contract with appellee, whereby a tract of coal land containing about 45 acres, owned by appellees, was consolidated with an adjoining tract owned by appellant company containing about 70 acres, for the purpose of form-

ing a contiguous boundary of merchantable coal which could be operated by a single plant. The provisions of the contract consolidating the properties reads in part as follows:

"And whereas the tract of land herein described belonging to the first party, and the tract herein described belonging to the second party, adjoin each other, and both of said tracts are underlaid with coal seams of workable thickness, and it is more advantageous and economical to mine all of the coal in said two tracts with one and the same mining operation, and the parties hereto desire for the purpose of such contemplated mining operation to consolidate the two said tracts of land (including the land to be acquired by second party by the exchange with T. J. Asher as above stated) and tract and use said tract of land as one consolidated boundary for the purpose of mining and shipping all of the merchantable coal therefrom."

It was further specified in the contract that the royalty value of the merchantable coal in the joint properties was twelve (12c) cents per ton of 2,000 pounds; and further that the tract belonging to appellees contained about one-half as much merchantable coal as the boundary belonging to appellant company, hence appellees were to receive one-third or four (4c) cents per ton royalty on all coal taken from the consolidated boundary, and the company was to be the owner of the other two-thirds of the coal in the consolidated boundary. The company was given the exclusive right to mine and remove the coal, make coke and market the same, build roads, tramways, inclines, trestles, railroad sidings and sidetracks, etc., on, over and across appellees' tract of land, but were not to have any right to cultivate the surface or otherwise employ the surface except in such manner as was necessary in mining and operating the coal, and in taking timber for mining purposes. It is also provided: "It is contemplated and understood by the parties hereto that all of the coal from both of said tracts of land herein described is to be transported out to the railroad from said land over and through the first tract of land mentioned and described in this indenture," which provision gave the company the right to build a railroad, spur track or side track over and across the lands of appellees so as to reach the coal boundary, it appearing that the lands of

appellees lay next to the railroad and between the railroad and the property of appellant company, and that at the time of the making of the contract it was the purpose of the company to make its main entry on the lands of appellees, build its tipple there and also its camp and other structures necessary to the mining of the coal, and this was one of the inducing considerations that brought about the consolidation contract from which we have copied. In other words, appellant company could not well reach its coal property without going over the lands of appellees, or at least to do so required them to construct a considerable amount of railroad. In addition to the foregoing clause it was stipulated that the consolidation arrangement should continue in force for a period of twenty years from date of contract, provided the merchantable coal under the two tracts of land should last that long; but that the contract should terminate as soon as the merchantable coal was exhausted. The contract also contains a minimum royalty clause providing that after six months the company should pay to appellees $50.00 per month royalty whether that much tonnage was taken out or not, and beginning eighteen (18) months from date the company should pay appellees $100.00 per month throughout the balance of the lease term, and it was upon this clause of the contract that the suit was instituted, the company having failed to pay royalties as provided therein. In dealing with this part of the contract the lower court in its judgment said:

"It is further ordered and adjudged by the court that because of the facts shown in this record the plaintiffs are not entitled to collect from the defendants the minimum royalties of $50.00 per month and afterward $100.00 per month called for in said lease contract, exhibit 'A,' with the petition; to which ruling of the court the plaintiffs excepted at the time."

No cross-appeal has been prosecuted, and this part of the judgment cannot, therefore, be disturbed.

It appears that after prospecting the lands of appellees next to the railroad, the company discovered that the coal seams contained in it were split by ledges of slate and were not, therefore, workable or merchantable, and that later the company went around up Dry branch on to its own property a considerable distance away from the railroad and made its opening and there built its tipple

and plant, thus abandoning entirely the property of appellees. It was further shown by the evidence that the company, through its agents, attempted to notify appellees of the fact that the company did not propose to occupy their property with any of the company's buildings or mining operations, but appellees deny that they received such notice, saying that the only notice appellant gave was one to the effect it had decided to locate its tipple on its own land and desired a change in the contract so as to relieve the company from the payment of the minimum royalties, but appellees say they never consented to this. It would appear, however, from a reading of the whole contract, although there are no specific provisions to that effect, that the company had the right, upon reasonable notice, to withdraw.from the contract at any time and to thus relieve itself of the payment of royalties. But in the absence of a satisfactory showing that the company had complied with its part of the contract and had given reasonable notice to appellees of its intention to withdraw from the contract, the contract must be considered as binding upon both parties. The learned chancellor to whom the case was submitted concluded from the evidence that the appellant company had not given to appellees the required notice, and, therefore, held that the company was liable to appellees for four (4c) cents per ton royalty on all coal mined from the consolidated property, which, figured on the basis of 13,943 tons, amounted to $557.72, which was the least he could have done for appellees, having arrived at the conclusion that appellant company had not relieved itself from the contract by proper notice or other proceedings. Whether appellant company has by its refusal to operate the coal on appellees' land or by actual notice given to appellees, or in some other way, terminated the contract so as to be relieved from the payment of royalties in the future, is not before us.

The contract was a hard one for appellant company, but appellees showed that the company's agent sought them out at their home in Tennessee and by argument and persuasion induced appellees to enter into the contract, of course thinking at the time that the lands contained merchantable coal and would be useful to the company for a camp site and right of way to their other property. Neither of these things appears to have been true, and the company of its own accord temporarily aban-

doned the property of appellees and at great expense built a long spur railroad track up the hollow to its own property. It could by the exercise of reasonable diligence have relieved itself, from the lease contract of which it now complains, but the evidence does not satisfactorily show that it did so. It has only itself to blame.

Finding no error to the prejudice of the substantial rights of appellant the judgment is affirmed.

Judgment affirmed.